IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AMANDA R. CULVER,                          6:16-cv-00074-BR

        Plaintiff,                         OPINION AND ORDER

v.

NANCY A. BERRYHILL,[1]
Acting Commissioner, Social
Security Administration,

        Defendant.


**KATHERINE EITENMILLER**
**MARK A. MANNING**
Harder Wells Baron & Manning, PC
474 Willamette Street
Eugene, OR 97401
(541) 686-1969

        Attorneys for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**JANICE E. HEBERT**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1011

--------

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill, who became Acting Commissioner of the Social Security Administration on January 23, 2017, is automatically substituted in place of Carolyn W. Colvin.

1 - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**MICHAEL S. HOWARD**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104-7075
(206) 615-2539

        Attorneys for Defendant

**BROWN, Judge.**

Plaintiff Amanda R. Culver seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) under Titles XVI and II of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

Plaintiff filed applications for DIB on January 31, 2012, and for SSI on January 9, 2012, and alleged a disability onset date of March 19, 1980. Tr. 37, 312, 314.[2] Her applications were denied initially and on reconsideration. An Administrative

---

[2] Citations to the official transcript of record filed by the Commissioner on June 21, 2016, are referred to as "Tr."

Law Judge (ALJ) held a hearing on June 10, 2014.  Tr. 60-123.  At the hearing Plaintiff and a vocational expert (VE) testified.  Plaintiff was represented by an attorney.

On August 20, 2014, the ALJ issued an opinion in which she found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 37-52.  On November 20, 2015, that decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.  Tr. 1-4.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).


## BACKGROUND

Plaintiff was born on March 19, 1980.  Tr. 312, 314.  Plaintiff was 34 years old at the time of the hearing.  Tr. 60, 312, 314.  Plaintiff has a high-school diploma.  Tr. 346.  Plaintiff has past relevant work experience as a bus person, stock clerk, hand-packager, and nurse assistant.  Tr. 50, 107.

Plaintiff alleges disability due to "learning and mental disabilities" and back pain.  Tr. 345.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 40-50.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is more than a mere scintilla [of evidence] but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I. The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairments or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. § 404.1520(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff engaged in substantial gainful activity from January 2000 through December 2004 and from January 2007 through December 2007. Tr. 39-40. The ALJ, however, continued the sequential disability evaluation because the ALJ also found there had been "continuous 12-months period(s) during which [Plaintiff] did not engage in substantial gainful activity." Tr. 40.

At Step Two the ALJ found Plaintiff has the severe impairments of post-traumatic stress disorder, panic disorder, dysthymic disorder, borderline intellectual functioning,

attention-deficit disorder, left-knee patellofemoral syndrome, and obesity.  Tr. 40-41.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 41-44.

The ALJ found Plaintiff has the RFC to perform medium work. The ALJ found Plaintiff is able to lift 50 pounds occasionally and 25 pounds frequently; to follow "short and simple instructions"; and to perform work that is limited to "basic routine work tasks," that has "no close interaction with the public and only casual and superficial interaction with co-workers," and that is "stress low to prevent [Plaintiff] from becoming overwhelmed."  Tr. 44.  The ALJ defined "stress low" work as "no fast-paced production or pace work and a workplace with minimal changes in routine and setting."  Tr. 44.

At Step Four the ALJ concluded Plaintiff is unable to perform any of her past relevant work.  Tr. 50.

At Step Five, however, the ALJ found Plaintiff is capable of performing other jobs existing in the national economy as a "sweeper cleaner, industrial"; a "warehouse worker"; and a "laborer, salvage."  Tr. 51-52.  Accordingly, the ALJ found Plaintiff is not disabled.

## **DISCUSSION**

Plaintiff contends the ALJ erred when he (1) discredited Plaintiff's testimony; (2) improperly considered the medical, record including Plaintiff's Global Assessment of Functioning (GAF) scores, the opinion of Elizabeth Perrine, QMHP, and Ruth Ann Duncan, LMFT, and the opinion of David Truhn, Psy.D.; and (3) discredited the lay testimony of Roy Culver, Plaintiff's father.

## I. **Plaintiff's Testimony**

As noted, Plaintiff contends the ALJ erred when he discredited Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986).  *See also Spelatz v. Astrue*, 321 F. App'x 689, 692 (9th Cir. 2009).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996). *See also Delgado v. Commissioner of Social Sec. Admin.*, 500 F. App'x 570, 570 (9th Cir. 2012).

If the claimant satisfies the above test and there is not

any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if she provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). General assertions that the claimant's testimony is not credible are insufficient. *Id*. The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834).

At the June 10, 2014, hearing Plaintiff testified she has difficulty reading although she obtained her high-school diploma with the help of special-education services. Tr. 69-70. Plaintiff stated she has difficulty understanding and filling out forms and that each of her previous employers told her they were preparing to fire her because she was too "slow." Tr. 91. Plaintiff testified she suffers from anxiety and that she suffered from depression in the past, but the depression had improved since she regained custody of her children. Tr. 78-79. At the time of the hearing Plaintiff stated she was neither taking medication nor undergoing therapy for her anxiety. Tr. 79. Plaintiff testified she has difficulty maintaining her house because she struggles to concentrate long enough to complete tasks. Tr. 99.

Plaintiff also stated she had knee problems in the past, but

at the time of the hearing it was "doing a lot better." Tr. 83.

Plaintiff also testified since a car accident in 1999 she has

suffered low-back problems that cause her "constant pain" when

she sits and walks. Tr. 84-85.

The ALJ discredited Plaintiff's testimony on the basis that

(1) Plaintiff did not consistently seek treatment for her

depression and anxiety (including at the time of the hearing),

and, thus, Plaintiff's testimony that her depression and anxiety

rendered her unable to work was not credible; (2) the treatment

record does not fully corroborate Plaintiff's testimony;

(3) Plaintiff's testimony was not consistent with contemporaneous

reports of her ability to function; (4) Plaintiff did not follow

through on recommended mental-health treatment, and the timing of

Plaintiff's engagement in mental-health treatment suggests

secondary-gain motives for seeking treatment; and (5) Plaintiff

has demonstrated the ability to perform work at substantial

gainful activity levels since her alleged onset date.

The Court notes, however, that the ALJ did not entirely

discredit Plaintiff's testimony, but instead incorporated into

his assessment of Plaintiff's RFC many of the limitations to

which Plaintiff testified.

The ALJ correctly noted Plaintiff's mental-health treatment

history was sufficiently sporadic that it did not support

Plaintiff's statements about her alleged disabling anxiety.

Although Plaintiff sought extended mental-health treatment in 2010 and 2011 after her children were removed from her custody, Plaintiff discontinued that treatment after her children were returned to her custody. Tr. 523, 612-20. Plaintiff briefly began treatment again in February 2013, but she discontinued treatment in May of that year when she stated she moved out of town. Tr. 595-611. Plaintiff had not re-established care anywhere by the June 2014 hearing. Tr. 79.

Moreover, the ALJ also correctly noted that the medical record did not support Plaintiff's allegations of disabling conditions in numerous instances, including times when Plaintiff told her treatment providers that her conditions were well-controlled with medication or other conservative treatment. Tr. 470, 493, 523, 556, 597, 615.

Similarly, the ALJ reasonably concluded Plaintiff's testimony regarding her functionality was not consistent with portions of the record that demonstrated she functions at a higher level than Plaintiff indicated. For example, although Plaintiff reported in her disability application that she stopped working because of her conditions, Plaintiff told Dr. Truhn and Alison Prescott, Ph.D., that she left her last job because she became pregnant. Tr. 382, 461, 493-94. Plaintiff acknowledged at the hearing that she left her previous job due to her pregnancy, but she also stated her past employers were preparing

to fire her because she was "too slow" and that she "really never knew" why she could not work as fast as others.  Tr. 91-93. Plaintiff, however, told Dr. Prescott that "she would return to caregiving if she could do the physical work of the job," but she did not indicate she lacked the mental functionality to perform that work.  Tr. 493.

The ALJ also correctly noted Plaintiff failed to follow up on recommended mental-health treatment, and the ALJ reasonably inferred the timing of Plaintiff's pursuit of mental-health recourse suggests she was motivated to seek treatment in order to strengthen her applications for disability benefits rather then for the purpose of improving her mental health.  Although Plaintiff's therapist referred Plaintiff to a "coping class" on March 19, 2013, the ALJ correctly noted there is not any evidence in the record that Plaintiff followed up on that referral. Tr. 602.  Moreover, the ALJ pointed out that Plaintiff re-initiated mental-health treatment on February 26, 2013, only five days after she filed her Request for Hearing by Administrative Law Judge following the denial of reconsideration of her disability application.  Tr. 268-70, 605.  Thus, the ALJ reasonably inferred from the timing of Plaintiff's return to mental-health treatment that such treatment was intended to buttress her disability claim rather than to improve her mental health.

Finally, the ALJ noted Plaintiff's ability to work at a level of substantial gainful activity during the alleged period of disability undermines Plaintiff's allegations that her disabilities (which Plaintiff contends rendered her unable to work since March 19, 1980) are not, in fact, so severe that Plaintiff is unable to work.

On this record the Court finds the ALJ provided legally sufficient reasons supported by substantial evidence in the record for partially discrediting Plaintiff's testimony.

## II.  ALJ's Consideration of the Medical Record

Plaintiff contends the ALJ erred in his consideration of the medical record as to her mental-health conditions and, in particular, Plaintiff's GAF scores; the opinion of Perrine and Duncan; and the opinion of Dr. Truhn.

### A.  Plaintiff's GAF Scores

Plaintiff contends the ALJ erred when he did not find Plaintiff is disabled based on her mental-health issues as reflected in her GAF scores of 51 assessed on March 31, 2010; 41 assessed on May 19, 2010; and 45 assessed on February 27, 2013. Tr. 433, 467, 610-11.

The Ninth Circuit, however, "has recognized that 'the Commissioner has determined the GAF scale does not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorders listings.'" *Doney v. Astrue*,

485 F. App'x 163, 165 (9th Cir. 2012)(quoting *McFarland v. Astrue*, 288 F. App'x 357, 359 (9th Cir. 2008)). *See also Cote v. Colvin*, No. 3:15-cv-00103-SI, 2015 WL 7871169, at *6 (D. Or. Dec. 4, 2015). The Ninth Circuit, therefore, has not required ALJs to provide any rationale for disregarding or discrediting a GAF score when evaluating a claimant's mental-health limitations. *See Doney*, 485 F. App'x at 165 ("We therefore hold that it was not error for the ALJ to disregard [the claimant's] GAF score.").

The ALJ in this case, nonetheless, explained his reasons for finding Plaintiff is not disabled notwithstanding her GAF scores. When discussing GAF scores issued on March 31, 2010; May 19, 2010; and May 17, 2011, the ALJ reasoned the GAF scores were offered during the period in which Plaintiff's children had been removed from her custody, and, therefore, those scores were affected by social factors unrelated to Plaintiff's claim for disability. Tr. 48-49. More broadly, the ALJ noted GAF scores are "highly subjective" and "intertwine psychological symptoms, physical impairments, socioeconomic factors, and socioeconomic factors that are not considered under the Regulations." Tr. 49.

The ALJ's reasons for discounting Plaintiff's GAF scores are supported by substantial evidence in the record. Three of the four GAF scores were issued during the time that Plaintiff was attempting to regain custody of her children, and it is clear from the record that the stress of not having custody was the

primary driver of her mental-health symptoms during that period.
Moreover, the only GAF score Plaintiff identifies outside of that
period was determined at Plaintiff's appointment five days after
filing her Request for Hearing by Administrative Law Judge.

On this record, therefore, the Court finds the ALJ did not
err when he discredited Plaintiff's GAF scores.

**B.  Opinion of Perrine and Duncan**

Plaintiff next contends the ALJ erred when he discredited
the opinion of Perrine, a qualified mental-health professional,
and Duncan, a licensed marriage and family therapist.

Under the regulations in place at the time that Plaintiff
filed her disability applications and at the time when the
Commissioner rendered her final decision, the Commissioner's
regulations separated medial opinions into two types:  those from
"acceptable medical sources" and those from "other sources."  *See
Molina*, 674 F.3d at 1111.  Only "licensed physicians and certain
other qualified specialists" such as licensed or certified
psychologists, licensed podiatrists, and qualified speech-
language pathologists are considered "acceptable medical
sources."  *Id.*  In general, "[i]n order to reject the testimony
of a medically acceptable treating source, the ALJ must provide
specific, legitimate reasons based on substantial evidence in the
record."  *Id.*  On the other hand, the ALJ may "discount testimony
from these 'other sources' if the ALJ 'gives reasons germane to

each witness for doing so.'"  *Id.* (quoting *Turner v. Soc. Sec.
Admin.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).  The parties agree
Perrine and Duncan qualify as "other sources," and, therefore, to
discredit their testimony the ALJ was required to provide reasons
germane to their opinion.

Perrine and Duncan conducted a "Mental Health/Psychological
Assessment" of Plaintiff on March 31, 2010, after Plaintiff's
children were removed from her custody.  Perrine and Duncan found
Plaintiff to be "somewhat developmentally delayed," and she
"lack[ed] insight and understanding regarding the situation and
may have some poor judgment."  Tr. 434.  Perrine and Duncan found
Plaintiff's "symptoms meet the criteria for Adjustment Disorder
and Learning Disorder, NOS" and found Plaintiff's prognosis to be
"moderate to poor for responding affirmatively to treatment."
Tr. 434.  Perrine and Duncan concluded "[w]ithout treatment
[Plaintiff] is at risk for deterioration in functioning, which
would negatively impact her family, social and occupational
life."  Tr. 434.

The ALJ discredited the opinion of Perrine and Duncan
because the opinion was not consistent with evidence in the
record, including Plaintiff's statements that she functions
adequately even during periods in which she does not have mental-
health treatment and because the opinion was offered for the
purpose of a parenting evaluation and did not address the issue

whether Plaintiff is disabled. The ALJ is correct that the opinion of Perrine and Duncan was focused on Plaintiff's ability to care for her children and did not expressly address whether Plaintiff was capable of employment. Although some portions of the assessment and findings may be relevant to the disability determination, much of the assessment is not relevant to the issues that were under consideration by the ALJ.

Moreover, the ALJ reasonably found the opinion or Perrine and Duncan to be inconsistent with other parts of the medical record. Although Perrine and Duncan opined Plaintiff would be at risk of "deterioration in functioning" without mental-health treatment, the record reflects Plaintiff went without treatment for extended periods without a marked loss in everyday function. *See* Tr. 523 (Plaintiff reported to her primary-care provider that she "did not think she had depression" and "feels fine off the medication.").

On this record, therefore, the Court concludes the ALJ did not err when she discredited the opinion of Perrine and Duncan because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

### C. Dr. Truhn's Opinion

As noted, Plaintiff contends the ALJ erred when he discredited the opinion of Dr. Truhn, an examining psychologist who conducted a "Comprehensive Psychological Evaluation" of

Plaintiff on May 19, 2010.  Tr. 458-69.

An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.  *Taylor v. Comm'r of Soc. Sec.,* 659 F.3d 1228, 1232 (9th Cir. 2011).  When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Turner v. Comm'r of Soc. Sec.,* 613 F.3d 821, 830-31 (9th Cir. 2010)(quoting *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 1995)).  The opinion of a treating physician is "given greater weight than the opinions of other physicians." *Kelly v. Astrue,* 471 F. App'x 674, 676 (9th Cir. 2012)(quoting *Smolen v. Chater,* 80 F.3d 1273, 1285 (9th Cir. 1996)).

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester,* 81 F.3d at 830.  *See also Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014).  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Taylor,* 659 F.3d at 1233 (quoting *Lester,* 81 F.3d at 831).  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's

opinion, the ALJ must articulate her reasons for doing so with specific and legitimate reasons supported by substantial evidence. *See, e.g.*, *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Dr. Truhn found Plaintiff exhibited symptoms of post-traumatic stress disorder (PTSD) as a result of abuse as a child and as an adult and that Plaintiff described symptoms of depression that had "been occurring for at least four and a half years" and were "exacerbated" by the loss of custody of her children. Tr. 467. Dr. Truhn also found Plaintiff's "scores on the neuropsychological screening test are indicative of a cognitive disorder" and Plaintiff's "scores on the intellectual testing fell in the borderline range" with specific deficits in abstract thinking, knowledge and use of vocabulary words, and knowledge of common-sense reasoning and ability to solve day-to-day problems. Tr. 467. Dr. Truhn noted, however, that "[i]f the depression, anxiety, and symptoms of [PTSD] are treated and become less severe, that can affect her intellectual and cognitive functioning." Tr. 468.

The ALJ gave "some weight" to Dr. Truhn's opinion because it was "consistent with the evidence of record" and "his opinions adequately consider [Plaintiff's] subjective mental health complaints." Tr. 49. The ALJ, however, partially discredited Dr. Truhn's opinion on the basis that "Dr. Truhn did not evaluate

[Plaintiff] for disability purposes, rather for suitability as a parent." Tr. 49.

The ALJ is correct that Dr. Truhn's opinion addressed Plaintiff's ability to provide for her children as a parent and did not extensively discuss Plaintiff's ability to work. For example, Dr. Truhn's recommendations and conclusions were specifically framed as answers to questions that related to Plaintiff's ability to serve as a parent. Tr. 467-69. The ALJ is also correct that many of the broader conclusions that Dr. Truhn reached were accounted for in the ALJ's assessment of Plaintiff's RFC, including in the ALJ's limitation of Plaintiff to "following short and simple instructions," performing work that is limited to "basic routine tasks," not having "close interaction with the public" and only being required to have "casual and superficial interaction with co-workers," and being limited to "stress low" work to "prevent [Plaintiff] from becoming overwhelmed." Tr. 44. Thus, to the extent that Dr. Truhn's conclusions applied to the ALJ's disability determination, the ALJ sufficiently accounted for Dr. Truhn's assessment in the ALJ's evaluation of Plaintiff's RFC.

On this record, therefore, the Court concludes the ALJ did not err when he partially discredited Dr. Truhn's opinion because the ALJ provided legally sufficient reasons supported by substantial evidence for doing so.

### III. **Lay Testimony**

Plaintiff contends the ALJ erred when he discredited the lay testimony of Plaintiff's father, Roy R. Culver.

When determining whether a claimant is disabled the ALJ must consider lay-witness testimony concerning a claimant's limitations and ability to work. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). If the ALJ wishes to discount the testimony of lay witnesses, he "must give reasons that are germane to each witness." *Id.* (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). *See also Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995)(improperly rejected lay-witness testimony is credited as a matter of law).

Although the ALJ's reasons for rejecting lay-witness testimony must be "specific," *Stout v. Comm'r, Social Sec., Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006),the ALJ need not discuss every witness's testimony on an individualized basis. *Molina*, 674 F.3d at 1114. "[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id. See also Valentine v. Comm'r Soc. Sec. Admin.*, 674 F.3d 685, 690 (9th Cir. 2009).

Roy Culver submitted a Third Party Adult Function Report dated March 26, 2012, in which he stated Plaintiff "does not understand simple things and she is very slow about doing

things." Tr. 391. Roy Culver stated Plaintiff does not spend time with others, is "alone all the time," and does not go anywhere on a regular basis. Tr. 395. Roy Culver reported Plaintiff's conditions affect her abilities to lift, bend, stand, squat, walk, talk, climb stairs, remember, complete tasks, understand, and follow instructions. Tr. 396. Roy Culver stated Plaintiff's back pain limits her physically, and she can only walk four or five blocks before requiring rest. Tr. 396. Roy Culver reported Plaintiff does not follow written instructions well because she "[cannot] read very well," does not follow spoken instructions well because "she will start something and then she stops," and does not handle stress or changes in routine well. Tr. 396-97. Roy Culver also stated Plaintiff has had these limitations "all her life." Tr. 395.

The ALJ discredited Roy Culver's testimony on the basis that it was inconsistent both internally and with Plaintiff's report of functioning. Tr. 50. The ALJ reasonably found Roy Culver's report to be particularly inconsistent with respect to Plaintiff's social functioning. Although Roy Culver stated Plaintiff does not spend time with others and "stays alone all the time," he also stated Plaintiff does not have a problem getting along with family, friends, and neighbors and, in fact, needs somebody to accompany her when she goes out. Tr. 395. In addition, the ALJ found Roy Culver's testimony was contradicted

by Plaintiff's reports.  As the ALJ noted, Roy Culver stated Plaintiff does not go anywhere on a regular basis, but Plaintiff reported to Dr. Prescott that she "drives to run errands about twice a week," including trips to the grocery store and to appointments.  Tr. 395, 494.

Accordingly, on this record the Court concludes the ALJ did not err when he discredited the testimony of Roy Culver because the ALJ provided legally sufficient reasons supported by substantial evidence for doing so.

## **CONCLUSION**

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 15th day of May, 2017.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge